REGAN, Judge.
Joseph Michael Dee, who was named testamentary executor and residual legatee in a will executed by Honorine Barouquet, widow of Eugene Barrieu, now deceased, filed a petition to probate this will, made in the form prescribed by LSA-R.S. 9:2442, which is generally referred to as a statutory will.
The probate thereof was opposed by Mrs. Marie Duvio, divorced wife of Joseph Dee and Jeanne Duvio, wife of Victor Bar-rousse, who in substance contended that the will was invalid because the formalities created by the statute were not complied with in that the testatrix did not sign each of the three pages of the document without assistance; that the will was not read aloud to the testatrix and the witnesses before it was signed; and that the deceased evidenced no intention of confecting a will when the document was executed but was coerced into the signing thereof.
From a judgment dismissing this opposition, the opponents have prosecuted this appeal.
The record reveals that the decedent had made three wills, namely, an olographic will written in the French language in the year of 1944, a statutory will in 1958 and a second statutory will on April 8, 1961. Of course, the validity of the last will, which substantially increased the value of the executor’s legacy, is the one which opponents now are endeavoring to prove is a nullity.
This will, executed before Ray Clement, an attorney and notary public, was witnessed by Charles Arceneaux[1] and Louis Doherty, a tenant of the decedent, both of whom, at Clement’s request, acted as witnesses.
When the will was offered for probate, both Clement and Arceneaux related that the will was read in its entirety to all the persons who signed the document, that tire testatrix assented to each paragraph and disposition contained therein before the witnesses and that the testatrix signed each page. They also conceded that Ar-ceneaux assisted the testatrix in signing her name since her hand was unsteady due to feebleness caused by age. She was approximately 91 when the will was signed.
The assistance rendered by Arceneaux and the extent thereof forms the basis for one of the opponents complaints that the will was invalid, because the formalities *838 prescribed by LSA-R.S. 9:2442 were not complied with.
Although Clement and Arceneaux testified that the will was voluntarily signed by decedent, Louis 'Doherty, the other witness thereto related that Clement “grabbed” decedent’s hand and signed her name on all three pages. He asserted that the signature was not voluntary since Mrs. Bar-rieu emphatically stated she did not wish to make a will moments before the document was signed by the notary, witnesses and the testatrix.
Opponents insist that this assistance nullifies the will since the signatures “Hon-orine Barrieu” affixed to each page of the will were, in fact, written by Arceneaux. To establish the invalidity of the signatures, opponents requested the appearance on the trial hereof, of Gilbert Fortier, Jr., a handwriting expert.
Fortier stated that he had examined the three signatures and the word “Honorine” on all three pages was written naturally or with very little assistance. He did say that in parts of each signature the handwriting reflects that the assisting hand became more dominant, either because the writer was unable or unwilling to continue writing.
Neither Clement nor Arceneaux deny that assistance was given and Arceneaux explained that the testatrix’s hand was unsteady and she could not write on the signature line; therefore, he guided her hand along the line thereof.
In evaluating the evidence adduced with respect to the signature, the trial judge, in well considered written reasons for judgment, observed that the witness Doherty was unworthy of belief. He pointed out that while Doherty testified that a feeble old lady was forced to execute a will, despite her intentions to the contrary, he nevertheless participated as a witness to the document. The evidence also reflected that Doherty was a close friend of Noel Barrousse, whose mother was named as one of the residuary legatees in the 1958 will, which would be probated in the event the last will was invalidated.
The trial judge also observed that the handwriting expert called by the opponents actually supported the testimony of both Arceneaux and Clement relative to the signing of the will, for on all three pages of the document the first name was written with little or no assistance. It is quite obvious that if the testatrix was forced to sign her name on page two, she would not voluntarily write her first name on page three.
The question of law posed for our consideration is whether the assistance rendered by Arceneaux invalidates the will. LSA-R.S. 9:2442 provides in part:
“(1) Testator. In the presence of the notary and both witnesses the testator shall signify to them that the instrument is his will and shall sign each separate sheet of the instrument.”
Counsel for opponents relies on the following language in the Succession of Walsh[2] to support his argument that the signatures are invalid:
“The contention is that one O’Brien not only held the hand of Mrs. Walsh, but that he controlled its every movement and directed the pen which made the letters, thereby making the writing of the will the work of O’Brien and not that of the testatrix.
“If this were true as a matter of fact, then there would he no valid will.” (Emphasis' added.)
In the Walsh case, the court was of the opinion that O’Brien merely steadied the hand of the testatrix in the writing of the disputed olographic will, and therefore concluded that it was valid.
We are of the opinion that the rationale of the Walsh decision is more favorable to *839 proponent than to the opponents, since the evidence preponderates to .the effect that the decedent intended to sign the document in view of the fact that her first name on all three pages was written with little or no assistance. We, therefore are logically compelled to conclude that Arceneaux’s assistance did not invalidate the will.[3]
The second informality complained of by opponents is that the will was not read aloud in its entirety before it was signed. This contention was not proven since the only evidence adduced to establish it as a fact was the testimony of Doherty, who, the trial court reasonably concluded, was not worthy of belief.
The trial judge properly disposed of opponents third complaint as to form as follows:
“The final point relied upon by opponents is that the declaration on the third page of the will does not state that decedent declared it was her will in the presence of the notary and the witnesses.
“The form suggested by the statute provides 'declared * * * in our presence’, whereas the will states ‘declared * * * to the said witnesses and Notary Public’. Opponents contend that under the particular phraseology of the will, the declaration could have been made to the notary and witnesses out of the presence of any of them. The statute permits a declaration substantially similar to the one suggested. The declaration in the will meets that test.”
Turning to opponents contention that undue influence was exerted on the testatrix by Dee, the residuary legatee, at the time the will was executed, we are of the opinion that the record totally fails to support this contention.
Clement, the notary who prepared the will, testified that Dee informed him that Mrs. Barrieu wished to change her will on the morning of April 8, 1961. Dee also told him what changes the testatrix wished to have made.
Before preparing the document, he visited Mrs. Barrieu at her home and reviewed each provision of the new-will to be drafted. He then returned to his office to type the will and went back to Mrs. Barrieu’s home, where it was later executed.
Clement testified that each paragraph of the will was read to the testatrix by him in the presence of the witnesses and that she clearly assented to each provision thereof. His recital was fully corroborated by Ar-ceneaux, a witness thereto.
Doherty, the other witness, related an entirely different version of the events that transpired when the will was signed. He said that when the notary and witnesses entered Mrs. Barrieu’s home she asked why they were there. When she was told that they came to participate in the execution of her will, Doherty insists that she said she had a will and did not wish to make another one. Since he signed the document as a witness, the trial judge very properly discounted his testimony, especially in view of other evidence introduced to contradict his version thereof.
When Dee testified as to just what occurred on the day the will was executed, his testimony adduced in court differed entirely from that which he had given when his deposition was taken prior to the trial of the opposition. As a result thereof, we are unable to place any credence in his testimony. However, we are of the opinion that his credibility is irrelevant insofar as it would effect the validity of the will.
Suffice it to say that the opponents have absolutely failed in their, efforts to prove coercion or undue influence upon Mrs. Barrieu at the time that she signed her will.
*840 For the reasons assigned, the judgment appealed from is affirmed, insofar as it dismisses the opposition, and this matter is remanded to admit the will to probate and for such further proceedings as the nature of the case may require.
Affirmed and remanded.

. Arceneaux, also an attorney, was an office associate of Clement.

. 166 La. 695. 117 So. 777, 779.

. See Succession of Rouquette, 161 La. 155, 108 So. 319, and Stafford v. Stafford, 12 La. 439.