LANIER, Judge.
This is a direct action brought in a succession proceeding seeking to annul a probated statutory will of a person whose sight was impaired to the extent that he could not read. After a trial on the merits,[1] the district court upheld the validity of the will. This suspensive appeal followed.
FACTS
Alvah Jackson Rogers executed a statutory will as a sight-impaired person on December 14, 1982. On February 4, 1983, Rogers died without surviving ascendants, descendants or spouse. On February 7, 1983, Luther Bankston filed a petition to probate the will and be recognized as testa *547 mentary executor. The will was probated and Bankston was so recognized by court orders entered on that same date.
On May 3, 1983, Louise Tregre Jarreau Ruiz, Rogers’ sister-in-law and a particular legatee in the will, filed a petition to annul the 1982 will and to probate a 1969 statutory will. Ruiz would have been executrix under the 1969 will and was named as a particular legatee therein.[2] Ruiz contended the 1982 will was not valid because it was not prepared and executed in the form and substance required for sight-impaired persons by La.R.S. 9:2443 and Rogers lacked the mental and physical capacity to execute such a will on December 14, 1982. On August 28, 1984, Ruiz filed a supplemental and amended petition asserting undue influence, enticement and persuasion by some of the legatees in the 1982 will. The trial was held on October 10, 1984.
BURDEN OF PROOF
La.C.C.P. art. 2932 provides as follows:
The plaintiff in an action to annul a probated testament has the burden of proving the invalidity thereof, unless the action was instituted within three months of the date the testament was probated. In the latter event, the defendants have the burden of proving the authenticity of the testament, and its compliance with all of the formal requirements of the law. [Emphasis added.]
Rogers’ will was probated on February 7, 1983. Ruiz’s petition to annul was filed within three months of the date of probate on May 3, 1983. Thus, in the trial court, legally the burden was on the appellees (proponents of the will) to prove (1) the authenticity of the will and (2) compliance with all of the formal requirements of the law. Succession of Norton, 451 So.2d 1203 (La.App. 5th Cir.1984) and the cases cited therein. However, in actual fact, the trial court judge ruled the burden of proof was on Ruiz (the opponent), and her counsel indicated he had no objection to this ruling.[3] Ruiz then called five witnesses to testify and presented three exhibits (which included the will). The appellees questioned the witnesses called by Ruiz and presented four exhibits. Because Ruiz acquiesced in the trial court’s burden of proof ruling and has not assigned error in such ruling in this appeal, we will apply that burden of proof to adjudicate this appeal.
VALIDITY OF ATTESTATION CLAUSE
(Assignments of Error A and C)
Appellants[4] contend the attestation clause of the will does not indicate that the notary read the will aloud and, therefore, the trial court committed error in finding it in substantial compliance with the statutory requirements for such a will.
La.R.S. 9:2443(B) provides how a statutory will for a sight-impaired person is to be confected, as follows:
B. The statutory will shall be prepared in writing and shall be dated and executed in the following manner:
(1) The mil shall be read aloud by the notary in the presence of the testator and three competent witnesses, and the witnesses shall follow the reading on copies of the will.
(2) After the reading, the testator shall declare or signify to them that he heard the reading and that the instrument is his last will and shall sign his name at the end of the will and on each other separate page of the instrument. If the testator cannot sign his name, he *548 must so declare or signify to the notary in the presence of the witnesses and declare or signify the cause that hinders him from signing, and shall then affix his mark in the places where his signature is required.
(3) In the presence of the testator and each other, the notary and the witnesses shall then sign the following declaration, or one substantially similar: “Read aloud by the notary in the presence of the testator and each other, such reading having been followed on copies of the will by the witnesses, signed at the end and on each other separate page, (or if not signed by the testator, the statement of his declaration or signification that he cannot sign his name and of the cause that hinders him from signing) and declared or signified by testator, in our presence, to be his last will and testament, and in the presence of testator and each other we have hereunto subscribed our names on this_day of_, 19_” [Emphasis added.]
The attestation clause of Rogers’ will is as follows:
READ ALOUD in the presence of the Testator and of each other, such reading having been followed on copies of the will by Notary and witnesses, not reading the will aloud, signed by Testator, not being able to see, and declared by Testator above named in our presence to be his Last Will and Testament, and in the presence of the Testator and each other, we have hereunto subscribed our names on this 14th day of December, 1982.
In Succession of Brown, 458 So.2d 140, 142 (La.App. 1st Cir.1984), appears the following:
All of the formal requisites for the confection of a statutory will must be observed, under penalty of nullity. There must be an attestation clause, or clause of declaration. However, its form is not sacrosanct. Succession of Morgan, [257 La. 380], 242 So.2d [551] at 552 [La.1970]; Succession of Dilley, 422 So.2d 516 (La.App. 5th Cir.1982). In Succession of Morgan, 242 So.2d at 552-553, the Louisiana Supreme Court discussed the attestation clause as follows:
It may follow the form suggested in the statute or use a form substantially similar thereto. The attestation clause is designed to evince that the facts and circumstances of the confection and execution of the instrument conform to the statutory requirements. In constructing the attestation clause of this type of will, this court has been most liberal in its determination of whether the clause complies in form and whether it evidences the requisites to supply validity to the instrument. ... In construing an attestation clause we will not require strict, technical, and pedantic compliance in form or in language. Rather, we will examine the clause to see whether there is substantial adherence to form and whether it shows facts and circumstances which evidence compliance with the formal requirements for testamentary validity. [Emphasis added].
The elements of the form for the attestation clause set forth in La.R.S. 9:2443(B)(3) are: (1) the will was read aloud by the notary; (2) the reading was in the presence of the testator and the three witnesses; (3) the witnesses followed the reading on copies of the will; (4) in the presence of the notary and three witnesses, the testator signed the will (and each page thereof) and declared it to be his last will and testament; and (5) in the presence of the testator and each other, the notary and the three witnesses signed the attestation clause.[5]
The attestation clause in the instant case sets forth elements 2 through 5. It *549 also states the will was read aloud, but is somewhat ambiguous about who did the reading. To determine if this ambiguity is fatal, we must examine the statutory procedure for making this type of will and the reasons for such. A person who is sight impaired to the extent that he cannot read must rely on his other senses to communicate. To accomplish communication, the statute requires that the proposed will be read aloud to the testator. The three witnesses are required to follow the reading of the will on copies. This is to assure that the correct document is read to the sight-impaired person. The testator then must orally declare to the notary and the three witnesses that he heard the reading and that the document read was his last will and testament. The testator then signs the will. This completes the required communications. When viewed in this posture, it is apparent that the reading of the will aloud is very important. However, who reads the will aloud is not so important because the witnesses verify that the correct document was read and the testator advises the notary and the witnesses that what was read to him correctly represents his last will and testament. The testator then signs what was read to him in the presence of the notary and the three witnesses. Thus, the ambiguity of the attestation clause on who did the reading does not cast doubt on the integrity of the testament, and the clause is in substantial compliance with La.R.S. 9:2443(B)(3).
This assignment of error is without merit.
DID THE TESTATOR HEAR THE READING OF THE WILL?
(Assignment of Error B)
Appellants contend the trial court committed error by failing “to address the issue of the testator not having declared or signified that he heard the reading of the will.”
La.R.S. 9:2443(B)(2) provides that after the will is read the testator shall, in the presence of the notary and the witnesses, (1) declare he heard the reading, (2) declare that the instrument is his last will and testament, and (3) sign the will. The sample attestation clause contained in La. R.S. 9:2443(B)(3) contains references to the signing by the testator (item 3) and the declaration that the instrument is his last will and testament (item 2), but does not contain a reference to the fact that the testator heard the reading (item 1). Thus, although the purpose of an attestation clause is to show the facts and circumstances of the confection and execution of the will conformed to statutory requirements, the statutorily recommended clause herein does not completely do so. The clause actually used herein does not contain a statement that the testator declared he heard the reading. However, since the statutorily recommended clause does not require the presence of such a statement, the clause actually used cannot be defective for not containing the statement. Since the attestation clause is not completely self-proving, the only way in which issues involving the hiatus (testator’s declaration of hearing the reading) can be resolved is by taking evidence.
As previously indicated, the burden of proof under the particular circumstances of this case was on the opponent. The notary on the will was Nita R. Gorrell, and the witnesses were Jo Ann Vest, Randy L. Robin and Billie G. Waits. Vest, Robin and Waits were not called to testify at the trial. Gorrell testified but was not questioned about whether or not the testator declared he heard the reading of the will. Since the burden of proof was on the opponent, absence of proof means she did not meet the burden imposed on her and she failed to prove her claim.
*550 This assignment of error is without merit.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed at appellants’ costs.[6]
AFFIRMED.

. When the petition to annul was filed, La.C.C.P. art. 2931" required it to be tried as an ordinary proceeding. Prior to the trial, La.C.C.P. art. 2931 was amended by Acts 1984, No. 90, to provide that the action shall be tried as a summary proceeding. Nevertheless, an ordinary trial was held.

. Ruiz was named as alternate executrix in the 1969 will, but the primary executrix had died.

. Subsequently, counsel for Ruiz cited La.C.C.P. art. 2932 and Succession of Smith, 150 So.2d 842 (La.App. 3rd Cir.1963), application denied, 244 La. 399, 152 So.2d 213 (1963) to the trial court for the proposition that the burden of proof was on the proponents of the will. However, the trial proceeded as if the burden of proof were on the opponent to the will.

.Ruiz died after the trial but before the trial court judgment was rendered. Her two executrices were substituted as parties plaintiff.

. The testator also signed the attestation clause used herein.

. The claims of lack of testamentary capacity and undue influence were not asserted in this appeal.